IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEFAN M. JONES,                          )
                                          )
    Plaintiff,                        )
                                          )
    v.                                )   Civil Action No.  04-260 Erie
                                          )
JO ANNE B. BARNHART,                      )
Commissioner of Social Security,          )
                                          )
    Defendant.                        )

## OPINION

COHILL, D.J.

    Stefan Jones ("Claimant") here appeals the Commissioner's denial of his claim for disability benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"),  42 U.S.C. §§401-433, 1381-1383f.  Specifically, Jones appeals the determination that he is not disabled.  Before the Court are cross-motions for summary judgment filed by the parties to this appeal pursuant to Fed. R. Civ. P. 56.  We have jurisdiction under 42 U.S.C. § 405(g).

    Having considered the arguments of the parties, the administrative record, and the applicable law, for the reasons set forth below we will grant summary judgment in favor of the Commissioner and against the Claimant.

### I. Background

**Claimant's Background**

    Jones was thirty-four years old at the time of the hearing, and is therefore considered a "younger" individual under the regulations.  20 C.F.R. §§ 404.1563(c), 416.963(c).  He has a tenth grade education and past relevant work experience as a customer service representative, dairy laborer, drywall installer, and delivery person.  (Tr. 147, 162).

1

In November, 2002, when he applied for benefits, Claimant represented that he did not cook, clean or participate in recreational activities with his family. (Tr. 152-53). He watches football, plays video games, and designs websites. (Tr. 154). In August 2003, Claimant reported that he "sometimes" does the dishes, "sometimes" goes grocery shopping and to the movies with his wife, listens to music, reads the newspaper, watches television, and occasionally goes out with friends. (Tr. 175-177).

**Chronological Medical History**

Claimant's medical history shows a history of treatment for both psychiatric and physical conditions.  Medical records show that Jones sought treatment for pain in his back and right hip, where he sustained a gunshot wound in 1989, as well as for migraines.  The record also establishes obesity.  In a questionnaire dated August 7, 2003, Jones gave his weight as 330 pounds. (Tr. 175). Treatment for bipolar disorder began many years before the March 3, 2002 onset of disability date. The record includes Residual Functional Capacity ("RFC") assessments of both his physical and mental capacity and restrictions.

The earliest record evidence of mental health treatment shows that the Claimant was hospitalized for psychiatric treatment from February 25 - 27, 1990.  He was diagnosed with substance abuse, possible intermittent explosive disorder, and personality disorder with significant anti-social traits. (Tr. 193-97).

Claimant was involuntarily admitted by the police to Hamot Medical Center on January 28, 1996, after threatening to shoot himself.  He was released on February 1. (Tr. 193-205).

James R. Steele, D.O., treated Jones from July 9, 1971 to February 12, 2003.   (Tr. 179-92, 331-34, 393-434).  Dr. Steele prepared an evaluation on September 20, 1999, in which he noted that Jones had a poor to fair ability to adapt to stressful situations, fair to good ability in the area of concentration and task persistence; and poor to fair ability in social functioning. (Tr. 226-37).  Dr. Steele prescribed prozac and xanax. (Tr. 299, 231).

A consultative psychological examination was performed on November 18, 1999, by

2

Michael Mercatoris, Ph.D. (Tr. 245-253). Dr. Mercatoris reported that the Claimant showed a great deal of agitation and was nervous, and that he didn't take his medication because it put him to sleep. (Tr. 245). Claimant's diagnosis was bipolar disorder II, panic disorder with agoraphobia, and "most likely" a personality disorder, NOS, with antisocial traits. (Tr. 252).

On January 13, 2000, Elio D. Demeria, M.D. consulted with the Claimant regarding a recent myelogram and subsequent CT scan of his cervical spine. Dr. Demeria declared that these tests were normal, and that it was unlikely that his complaints were originating in his spine. (Tr. 255).

Jones went to the emergency room with a migraine headache on February 16, 2000. He reported that he had run out of his medications. (Tr. 288-89). Jones again went to the emergency room complaining of a migraine headache on May 9, 2000; he was treated and released, and told to follow up with his regular physician. (Tr. 285).

Dr. Steele evaluated the Claimant's condition on May 18, 2000. He reported Jones' ability to do work-related mental activities on a regular basis was "poor to none." (Tr. 187). He found that Jones was aggressive, his speech was normal , his concentration was poor, and he was paranoid. (Tr. 179-192). Dr. Steele concluded that the Claimant had no ability to function in eight work-related areas, and that he would not be able to interact with supervisors, to deal with work stresses, to behave in an emotionally stable manner, to relate predictably, and to demonstrate reliability. (Tr. 188-89). He also opined that Jones could frequently lift ten pounds, occasionally lift twenty pounds, could stand/walk for one hour or less, could sit less than six hours, and had limited push-pull ability. (Tr. 190).

Jones was taken to the hospital by the police on May 27, 2000, because he was agitated and took extra Xanax. (Tr. 292-94). Treatment notes indicate that he designed websites and appeared highly intelligent. He was discharged on May 30. Diagnoses were bipolar disorder and panic disorder with agoraphobia; his prognosis was excellent if he obtained psychiatric follow-up care. (Tr. 291-94).

3

A psychological consultative examination was conducted by Melvin E. Carney, Ed.D. on July 6, 2000. (Tr. 295-301). Claimant was diagnosed with bipolar disorder and anti-social personality disorder. (Tr. 299). Dr. Carney reported that the Claimant was not entirely accurate in his statements. He opined that Jones' concentration and perseverance were "diminished because he elects it to be so, not because of diminished cognitive capabilities." (Tr. 298). Dr. Carney also indicated that Jones had poor/none ability in ten work areas. (Tr. 300-01). His had a global assessment of functioning ("GAF") of 45. (Tr. 299). [1]

Claimant was treated at the Veteran's Administration Hospital from November 9, 2000 through February 20, 2001. (Tr. 303-11). He was diagnosed with adjustment disorder, bipolar disorder, and intermittent explosive disorder. (Tr. 310). On November 6, 2001, Mark Steg, M.S. opined that Jones had a GAF of 60, which indicates moderate symptoms of moderate difficulty in social, occupational, or school functioning. (Tr. 310). On February 6, 2001, Claimant reported improvement in his anger reactions, and stated that his job was going "OK." (Tr. 306).

He sought treatment at an emergency room on June 18, 2001 for a migraine headache, and was given pain medication. (Tr. 313-14). He was similarly treated for migraines on July 31 and August 20, 2002. (Tr. 324-327).

Claimant was treated for bipolar disorder by Stairways Outpatient Clinic ("Stairways") starting in September 20, 2002. (Tr. 335-45). He had been previously been treated at Stairways from June 7, 2000 through August 13, 2001, but had stopped attending and the clinic closed his file. (Tr. 345).

A psychiatric evaluation performed by Booker Evans, M.D. of Stairways on September 23, 2002 shows that Jones reported taking his medications "intermittently" and stockpiling them during the previous year. (Tr. 341-44). Dr. Evans diagnosed bipolar disorder, and found that any substance abuse was in sustained remission. (Tr. 343). He reported that Jones' affect was

---

[1] A GAF of 41-50 indicates some serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)* 32 (4th ed. 1994).

4

elevated, he appeared nervous, his intelligence was average, his long-term memory was intact, and his insight and judgment were good. (Tr. 343). He was well-groomed, cooperative, alert, and attentive. (Tr. 343). Claimant reported that he had worked at West Telecommunications for eighteen months, until they closed his department. (Tr. 342). Claimant's short-term memory was deficient, and he had feelings of hopelessness, helplessness, and worthlessness. (Tr. 343). Dr. Evans found that Jones had a current GAF of 62 and that his highest GAF in the previous year was 70. [2] Dr. Evans recommended Anger Management Group and Depression Group therapy; the Claimant stated that these had not helped him in the past, and that he wanted to be treated with medications and individual psychotherapy instead. (Tr. 344).

Stairways progress notes from November 6, 2002, show that Jones had not completed the lab work needed for his medications. (Tr. 339, 344). Jones was alert and oriented, and denied thoughts of self harm. However, he complained of sleeping problems, poor concentration, depressed mood, and anxiety. (Tr. 339). On December 4, 2002, Stairways progress notes indicate that he had missed some doses of medication. He requested an increase in dosage, but his dosage was maintained at its current level and he was advised to comply with the prescribed regimen. (Tr. 340). Notes made on December 11, 2002 state that Jones "exhibits no major mental health problems" but did not believe he was improving; his medications were increased. (Tr. 340). The most recent Stairways records before the ALJ , dated February 5, 2003, show that he had not had his lab work done because he had been off his medications for one week. (Tr. 335).

John C. Kalata, D.O., performed a consultative physical examination on November 9, 2002. He found that Jones had a reduced range of motion in his neck and had mild difficulty getting off the examination table. His gait was stable (Tr. 350). Dr. Kalata determined that the Claimant could frequently lift/carry ten pounds, occasionally lift/carry twenty pounds, stand/walk for less than one hour, had no sitting limitation, and had limited push/pull ability due to shoulder and hip

---

[2] A GAF of 61-70 indicates that the individual has some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functions pretty well and has some meaningful relationships. *DSM-IV* at 32.

pain. (Tr. 354). He diagnosed Jones as having generalized osteoarthritis. (Tr. 349).

A psychiatric review was performed by Larry Smith, Ph.D. on December 2, 2002. He opined that Jones had affective disorders and substance addiction disorders. (Tr. 360). He found that Jones had mild restrictions in the activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace. (Tr. 370). Dr. Smith prepared an RFC assessment which found moderate limitations in ten work-related areas. (Tr. 356-57).

Alfred Mancini, M.D., prepared a physical RFC assessment on December 30, 2002. Dr. Mancini concluded that Jones could occasionally lift/carry twenty pounds, could frequently lift/carry ten pounds, could stand/walk at least two hours, could sit about six hours, and had unlimited push/pull ability. (Tr. 374-83). Dr. Mancini opined that Jones was not disabled.

Using information already in the file, Sean Su, M.D., a psychiatrist at Stairways, prepared a mental RFC assessment on Claimant's condition on April 9, 2003. (Tr. 384-387). He checked boxes indicated that the Claimant was "moderately limited" in the following areas:   carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance and being punctual, sustaining an ordinary routine without special supervision, working with or near others without being distracted by them, making simple work-related decisions, and completing a normal workday and workweek. In the area of social interaction, Dr. Su found that Jones was "markedly limited" in his ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 384-85).   Dr. Su found that Jones had severe problems with agitation and explosiveness, and had difficulty controlling his anger. (Tr. 386).

Claimant was treated by Kevin Kuric, M.D., for neck , back, and shoulder pain, from March 5 through July 7, 2003. (Tr. 435-45). Dr. Kuric also noted that Jones continued to have migraines. He prescribed medications for the pain. On April 21, 2003, while under Dr. Kuric's

care, Claimant went to the emergency room with a migraine headache. He reported that his headaches were usually controlled by Imitrex, but that he was out of his medication. He also stated that he had slipped on a ladder the previous day and injured his left calf. (Tr. 440). Dr. Kuric's office called in a prescription for Imitrex, but it could not be filled because Jones had used up his allocation for the month. (Tr. 440).

On April 30, 2003, Dr. Kuric prepared a physical RFC assessment. He found that Jones can occasionally lift/carry ten pounds, frequently lift/carry less than ten pounds, stand/walk for less than one hour, sit for less than six hours and must alternate between sitting and standing, and had limited push/pull ability in his lower extremities. He further found that Jones should never balance or crouch, and should only occasionally climb, kneel, crawl, or stoop. (Tr. 389-90). On May 5, 2003, Dr. Kuric diagnosed chronic low back pain with numerous athralgias. (Tr. 436). Treatment notes from July 7, 2003 indicate that Jones was doing "fairly well." However, he continued to have right shoulder pain and migraine headaches. (Tr. 435).

**The ALJ's Decision**

Jones filed his first application for benefits on September 3, 1999, which was denied initially and upon reconsideration, and which was not appealed. (Tr. 36-39, 47-49, 65-67). Claimant filed his current application for DIB on September 5, 2002, and his application for SSI on August 26, 2002, alleging disability since March 3, 2002 due to migraine headaches, arthritis, and bipolar disorder. (Tr. 75-77, 141). These claims were denied on January 9, 2003. (Tr. 50-53).

Jones' claims were heard by Administrative Law Judge ("ALJ") Elliott Bunce on September 30, 2003. (Tr. 30-54, 460-94). Claimant was represented by counsel and testified at the administrative hearing. He testified that he had worked as a supervisor at Gateway Computer's customer service, which was outsourced to West Tele Services, until his job was eliminated. He also testified that he had performance difficulties in that job. (Tr. 465-66). Regarding his physical condition, Jones gets one to two migraines a month. (Tr. 468). He has pain in his neck, lower back, head, right shoulder, right leg, and both hands. (Tr. 469, 477). He stated

that he needs to lay down every hour or so. (Tr. 471). He can lift five to ten pounds, and can only stand in one place for ten to fifteen minutes. (Tr. 479-80). Medications help with his bipolar disorder, but he testified to still having highs and lows. (Tr. 470). He has not been hospitalized since May 2000. (Tr. 471). He further testified that he does not "do much" in or outside the house, "between the pain and just not having the ambition to do it." (Tr. 470). Medications help him to live with his pain. (Tr. 475).

A vocational expert testified that considering the Claimant's age, educational background, work experience, and residual functional capacity, he was capable of adjusting to work at a light level of exertion as a general laborer in plastic production, or as a light cleaner. (Tr. 289). At a sedentary exertional level, Jones could find work as an assembler, or as a sorter in the food industry. (Tr. 490).

By decision dated November 24, 2003, Jones' claims were denied. (Tr. 17-26).

The ALJ concluded that Jones had severe impairments which do not meet or equal the criteria of listed medical impairments. (R. 25 finding 3,4). The ALJ found Claimant's testimony regarding his medical limitations to be not entirely credible. (R. 25 finding 5). He concluded that Jones has the residual functional capacity to perform work that does not require exertion above the light level; or more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling; or any repetitive turning of the head or neck; or more than simple, routine, repetitious tasks in a low-stress environment; (Tr. 25 finding 7). The ALJ defined such work as a job requiring few decisions or no more than occasional interaction with the general public, co-workers, or supervisors. (Tr. 26 finding 7). He cannot perform any of his past relevant work. (R. 26 finding 8).

The Appeals Council declined to review the ALJ's decision, and this civil action followed. (Tr. 8-11).

## II. Standard of Review

The standard of review used by this Court in reviewing the decision of the Commissioner in social security cases is whether substantial evidence exists in the record to support the decision.

*Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Judicial scope of review of a social security case is based upon the pleadings and transcript of the record. 42 U.S.C. § 405(g). We review the Commissioner's decision only to determine whether she applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *Schaudeck v. Commissioner of Social Sec. Admn.*, 181 F.3d 429, 431 (3d Cir. 1999). The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). We may not undertake a *de novo* review of the decision, and may not reweigh the evidence of record. *Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

"Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). Substantial evidence has been defined as more than a mere scintilla. *Plumer*, 186 F.3d at 427; *Hess v. Secretary*, 497 F.2d 837, 838 (3d Cir. 1974). Evidence is not substantial if the Commissioner fails to resolve conflicts created by countervailing evidence, particularly that of treating physicians, or if it is not evidence but mere conclusion. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Commissioner may accept or reject testimony or other evidence, but is not free to mischaracterize the evidence or to reject it for no reason or for the wrong reason. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).

To be eligible for social security disability benefits, a plaintiff must demonstrate an inability to engage in substantial gainful activity because of a medically-determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

To facilitate the disability determination, the Commissioner has set forth a five-step sequential analysis for an ALJ to use when evaluating the disabled status of a claimant. 20 C.F.R.

§ 404.1520(a); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).  The ALJ must determine (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., app. 1;  (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent the performance of past relevant work; and (5) if the claimant is incapable of performing past relevant work, whether he can perform any other work that exists in the national economy, in light of his age, education, work experience, and residual functional capacity ("RFC").  20 C.F.R. § 404.1520.

The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment. *Dobrowolsky*, 606 F.2d at 406.  Once this burden is met, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity. *Id.*

### III. Analysis

Applying this five-part framework to the Claimant's case, the ALJ found that the Claimant has not engaged in substantial gainful activity during the relevant period. ( Tr. 21).  He has a severe impairment or impairments that do not meet or medically equal one of the listed impairments. ( Tr. 21).  He is unable to perform any of his past relevant work. (Tr. 24).  However, he is able to make a vocational adjustment to work such as a food sorter, an assembler, and a cleaner. (Tr. 25).  Accordingly, the ALJ found that Jones was not disabled.

### A.

We first address the Claimant's vigorous and frequently reiterated argument that we must remand because the ALJ had an obligation to further develop the record and failed to do so.  Specifically, Jones asserts that the ALJ had an obligation to obtain mental health treatment records dated after February 2003, and to obtain further treatment records from Dr. Su at Stairways. (Cl.'s Br. at 14).

The burden of assuring that the ALJ has relevant medical and other evidence lies with the claimant.  42 U.S.C. § 423(d)(5)(A).  This is because the claimant is "in a better position to

provide information about [his] own medical condition." *Bowen v. Yuckert*, 482 US. 137, 147 n. 5 (1987); 20 C.F.R. §§ 404.1512(a), 416.912(a). Where a claimant is not represented by counsel, the ALJ does have an independent duty to develop the record. *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3d Cir. 1985).

In this case, the ALJ accepted further medical evidence from claimant's counsel at the administrative hearing: treatment records covering the period 4/13/74 through 2/13/03 from Dr. Steele, D.O., and treatment records covering the period 3/5/03 through 7/7/03 from Kevin Kuric, M.D., were received as evidence at that time. (Tr. 5). Claimant did not proffer the documents he now insists were so important. The ALJ then asked Claimant's counsel if the record should be kept open, or if counsel "was aware of any other information in your file or elsewhere that should be added to the record to make it complete?" (Tr. 463). Counsel said there was not. Furthermore, at the end of the hearing, counsel and the ALJ engaged in the following discussion:

| | |
|---|---|
| ATTY: | I did want to ask you Your Honor – |
| ALJ: | Oh, sure. |
| ATTY: | – you did note that the records from Stairways only went to the end of February.  Would you like me to obtain – |
| ALJ: | Oh, I'm – thank you for bringing that up.  Mr. Jones, since Dr. Sue [sic] became the doctor you're working with at Stairways has the nature of your treatment there changed?  Is Dr. Sue doing things differently than Dr. Evans did? |
| CLMT: | No, sir.  Generally it's the same. |
| ALJ: | Let – I'm hearing that what I have may be typical of what's happening now, [counsel].  On that basis I wouldn't ask for you to submit them but if you'd like the opportunity I'll certainly give you time. |
| ATTY: | That's okay, Your Honor.  As long as we can surmise that Claimant's current condition's the same as indicated – |
| ALJ: | It sounds as if – |

11

ATTY:          – in the February treatment –

ALJ:           – it is.

ATTY:          – notes then that's fine.

(Tr. 492-93).

The record clearly shows that counsel had ample opportunity to supplement the record with the very records he now says the ALJ neglected to obtain, and did not. We find this argument to be without merit, and it does not provide a reason to reverse or remand the ALJ's decision in this case.

**B.**

Claimant further argues that the ALJ's finding that Jones has the mental RFC to perform "simple, routine, repetitive tasks with one or two step instructions in a low stress environment, which I define as work requiring few decisions; or more than occasional interaction with the general public, co-workers, or supervisors" (Tr. 25-26) is not supported by any evidence in the record. The Claimant asserts that the ALJ makes this finding without citing to a supporting medical opinion, and he faults the ALJ for not mentioning particular Stairways mental health treatment records while relying on others.

To some extent, this argument is part of Claimant's broader contention that the ALJ should have supplemented the record with Dr. Su's later treatment notes, and we have already concluded that this argument is without merit. However, Claimant's position also invites us to reevaluate the medical evidence and reach a different conclusion than the ALJ did. This we cannot do. As a reviewing court we may not reevaluate the facts or re-weigh the evidence. *Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

Our task is to determine whether the decision is supported by substantial evidence, and we find that it is. An ALJ may reject the opinion of a treating physician if that opinion is inconsistent with other substantial evidence in the record. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). If the ALJ rejects the opinion of a treating physician, he must adequately explain the reasons for doing so on the record. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). Dr. Su

12

opined that the Claimant was markedly limited in his ability to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to get along with co-workers or peers. The ALJ found the opinion was not controlling, and explained his reasoning. The ALJ considered Dr. Su's evaluations, and found them "internally inconsistent" because, for example, his finding that the Claimant had no limitation remembering locations, work procedures, or simple or detailed instructions conflicted with his other findings. (Tr. 23). The ALJ also rejected Dr. Su's opinion because "[Dr. Su] does not relate his opinion to treatment notes." (Tr. 23). The opinion consists of checked boxes, and a brief statement that the Claimant had a "severe problem with agitation, explosiveness, difficulty controlling his temper" and provides no other explanation of the psychiatrist's conclusions. (Tr. 386). Furthermore, the ALJ found that the opinion was inconsistent with other Stairways treatment notes which stated, in December 2002, that the Claimant reported no major mental health problems, and, in February 2003, noted that Jones had admitted not taking his medications as prescribed.

We find that the ALJ explained his reasons for rejecting Dr. Su's opinion will not reverse or remand the ALJ's decision on this ground.

### C.

Claimant also asserts that the hypothetical posed to the vocational expert did not accurately portray Claimant's limitations. A hypothetical must include the impairments supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). After weighing the medical evidence, the ALJ concluded that Claimant has the residual functional capacity to perform a limited range of light or sedentary work that does not require repetitive turning of the head or neck (which accommodates his obesity, migraine headaches, and neck discomfort), and which is limited to simple, routine, low stress tasks and only occasional interaction with others (which accommodates his bipolar disorder). (Tr. 24). The hypothetical presented to the vocational expert is supported by substantial evidence, and incorporates all the physical and mental limitations which the ALJ concluded were suffered by the Claimant.

### D.

Claimant further argues that the ALJ's assessment of the evidence regarding Jones' physical impairments is erroneous. He states that the ALJ failed to take into account the frequency of Claimant's migraine headaches, and had a duty to further develop the record on Jones' physical pain.

Again, we have concluded that the ALJ had no duty to further develop the record in this case. Moreover, the ALJ reviewed the medical evidence and noted that the Claimant had complained of serious headaches. In reaching his decision, the ALJ relied on evidence that a brain CT scan in August 2002 was negative, that when Jones seeks emergency room treatment for his migraine headaches, they were relieved by medication; and that Dr. Kuric, who treated the Claimant from March 5 through July 7, 2003, shortly before the administrative hearing in September 2003, concluded that although he continued to have migraine headaches he was doing "fairly well." (Tr. 23). We find that substantial evidence supports the ALJ's conclusion that Claimant's migraine headaches are not disabling.

### E.

The Claimant also asserts that the ALJ improperly disregarded Dr. Kuric's opinion. Dr. Kuric prepared a physical RFC on the Claimant on April 30, 2003, which stated that Jones could lift no more than ten pounds and could not stand, sit, and/or walk through an eight hour workday. (Tr. 389). He also found that Jones should only occasionally climb, kneel, crawl, or stoop. (Tr. 389-90).

The ALJ did not find all of Dr. Kuric's conclusions persuasive, and explained his reasoning: Dr. Kuric offered no clinical or diagnostic findings to support his conclusions, did not disclose the length or nature of his treating relationship, and did not provide medical findings on Jones' medical history. (Tr. 22). Claimant's argument that the ALJ should have contacted Dr. Kuric for further information is without merit. The Commissioner should re-contact a treating physician when the evidence is inadequate and additional evidence is needed to make a disability determination. 20 C.F.R. §§ 404.1512(e), 416.912(e). This was not such a case.

The ALJ simply gave greater weight to Dr. Kalata's opinion, because it was supported by

14

an extensive physical examination of the Claimant. (Tr. 22). Dr. Kalata found that Jones was physically capable of light exertion, and that he could not stand or walk for more than two hours, but had unlimited ability to sit.

The ALJ considered the medical evidence of Jones' migraine headaches, along with conflicting findings on RFC assessments in the record, and concluded that Jones was not disabled. We find that this decision is supported by substantial evidence.

**F.**

Finally, Claimant takes issue with the ALJ's conclusion that Jones' own testimony regarding his disability was not credible. The ALJ must weigh evidence, resolve evidentiary conflicts, and determine credibility. *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993). Credibility determinations regarding a claimant's own testimony to his limitations are for the ALJ to make, and are accorded great weight and deference. *Irelan v. Barnhart*, 243 F.Supp.2d 268, 284 (E.D.Pa. 2003). The ALJ's decision must contain specific reasons for credibility findings, "supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Schwartz v. Halter*, 134 F.Supp.2d 640, 654 (E.D.Pa.2001) (quoting SSR 96-7p; *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir.1999)). In making a credibility determination, the ALJ may consider a claimant's daily activities, the location, duration, frequency, and intensity of pain or other symptoms, the type, dosage, effectiveness and side effects of medication, and other factors. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

When a claimant reports subjective complaints of pain, the ALJ must determine the extent to which a claimant is accurately stating the degree of pain and the extent to which he is disabled by it. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir.1999)(citing 20 C.F.R. § 404.1529(c)). The ALJ may "reject the claimant's claim of disabling pain if he affirmatively addresses the claim in his decision, specifies the reason for rejecting it, and has support for his conclusion in the record." *Hirschfeld v. Apfel*, 159 F.Supp.2d, 802, 811 (E.D.Pa.2001).

In this case, the ALJ determined that the Claimant's statements about his inability to work were "unsubstantiated and less than credible. His hearing testimony is inherently inconsistent with the balance of evidence." (Tr. 23). Jones testified that he could lift no more than five to ten pounds at a time, but also testified that he sometimes carried three or four grocery bags at a time. (Tr. 23). The ALJ considered the Claimant's subjective claim of pain, but noted that prescription medication was effective with his migraine headaches , and that he had not complained of experiencing any adverse side effects from his medications. (Tr. 22-23). The ALJ further noted that the Claimant has a history of not complying with his prescription regimens, and that he has failed to maintain regular treatment for his bipolar disorder. (Tr. 24). As to Claimant's testimony that he could not stand or walk for more than ten or fifteen minutes, the ALJ cited Jones' statement in August 2003 that he does dishes, cooks and cleans, as well as the fact that on April, 21, 2003, he reported that he fell off a ladder. (Tr. 24).

The record as a whole supports the ALJ's conclusion that Jones' testimony was less than credible, and the ALJ has explained his reasons for rejecting it and determining that Jones is not disabled.

### IV. Conclusion

For the reasons set forth above, we find that the ALJ's decision that Stefan Jones is not disabled is supported by substantial evidence, and therefore we will grant summary judgment in favor of the Commissioner and against the Claimant. An appropriate Order follows.


_Sept. 28, 2006_
Date

_Maurice B. Cohill, Jr._
Maurice B. Cohill, Jr.
Senior United States District Judge


16